IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | | |
|---|---|---|
| ISAIAH WILSON, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. AW-04-3922 |
| PRINCE GEORGE'S COUNTY, MD, | * | |
| Defendants. | * | |

*****

## MEMORANDUM OPINION

This action involves a wrongful death claim brought by Isaiah Wilson ("Plaintiff") as the next best friend of and Personal Representative of the Estate of Gary N. Wilson against Lance James Courson ("Courson" or "Defendant"). Currently pending before the Court is Defendant's Motion for Summary Judgment [32]. The Court has reviewed the entire record, as well as the pleadings with respect to the instant motions. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2004). For the reasons stated below, the Court will grant Defendant's Motion for Summary Judgment.

## FACTUAL & PROCEDURAL BACKGROUND

The following facts are taken in the light most favorable to Plaintiff. On the night of December 12, 2001, while patrolling the 5500 block of Sheriff Road in Landover, Maryland, Prince George's County police officers John Davidson and Courson observed Gary N. Wilson (the "Decedent" or "Wilson") yelling at two females. These officer describe this block of Sheriff Road as a high crime area. As the officers neared Wilson, Courson saw money in Wilson's hands, which led Courson to believe that Wilson was either trying solicit prostitution or participating in an illegal drug transaction.

The officers approached Wilson to investigate and saw Wilson place his hands near his waistband. In response, the officers ordered him to show his hands. Wilson did not comply with this order and continued to reach toward his waist. At that point, both officers moved to grab Wilson's arms and perform a pat down of this clothing. Wilson struggled with the officers and fell to the ground. Wilson also started shouting loudly, "I don't have anything" and yelled that the officers were trying to beat him. While on the ground and still struggling with the officers, Wilson again reached toward his waist.

Courson saw that Wilson had a gun tucked into his waistband and yelled, "Gun." According to the officers, Wilson then managed to jump to his feet, and Courson drew his service weapon. Around this time, Prince George's County officers Damron and Gibbs, who were already in the area, joined Courson and Davidson. Even though Courson had his weapon drawn, Officer Davidson continued to attempt to control Wilson's hands and gave him a "bear hug." In another effort to prevent Wilson from fleeing, Damron grabbed Wilson by the waistband and hit Wilson with an ASP baton. Damron saw the gun, dropped his baton, and pulled out his service weapon.

When Davidson became aware that Wilson had a gun, he pushed Wilson away from him. Courson then fired three shots at Wilson, and Wilson fell to the ground.

Officers called for emergency medical services to attend to Wilson's wounds, but Wilson died of his injuries from the shooting.

On December 13, 2004, Plaintiff filed this Complaint against Prince George's County, Maryland and Officer Courson, alleging negligent use of force, deprivation of civil rights, negligent supervision, and claims pursuant to the Survival Act concerning the December 12, 2001 death of Gary N. Wilson. This Court dismissed this Complaint as to Prince George's County, Maryland

2

pursuant to Rule 4(m) of the Federal Rules of Civil Procedure on October 3, 2005.

On May 17, 2006, Defendant Courson, the only remaining defendant, filed the instant motion for summary judgment. Instead of filing a response, Plaintiff moved for an extension of time to respond to the motion, which this Court granted on June 5, 2006. In accordance with this Court's order, Plaintiff's opposition brief was due on June 19, 2006. On June 19, 2006, Plaintiff filed a second motion for extension of time, seeking until June 21, 2006 to oppose the pending motion for summary judgment. This Court also granted the second motion. As of July 4, 2006, Plaintiff has failed to file any opposition, and as Plaintiff has not requested any additional extensions of time, Defendant's Motion for Summary Judgment is now ripe.

## STANDARD OF REVIEW

Summary judgment is only appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). In a motion for summary judgment, the moving party discharges its burden by showing an absence of evidence to support the non-moving party's case. *Celotex*, 477 U.S. at 325. The court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine*, 501 U.S. 496, 520 (1991) (internal citations omitted). To defeat a motion for summary judgment, the non-moving party must come forward and show that a genuine issue of material fact exists. *See Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). While the evidence of the non-movant is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.,* 152 F.3d 326, 330-31 (4th Cir. 1998);

3

*Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

With regard to Plaintiff's Section 1983 claim, Defendant also asserts that he is entitled to summary judgment on qualified immunity grounds. The doctrine of qualified immunity seeks to strike a balance between competing social objectives, by allowing the "vigorous exercise of official authority" while at the same time recognizing a possibility of redress for victims of officials' abuses. *See Butz v. Economou*, 438 U.S. 478, 504-06 (1978). Therefore, as against claims under federal law, "governmental officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see Jones v. Buchanan*, 325 F.3d 520, 531 (4th Cir. 2003) (declaring that "qualified immunity operates to ensure that before [governmental actors] are subject to suit, officers are on notice that their conduct is unlawful"). Because qualified immunity is "an immunity from suit rather than a mere defense to liability," a trial judge must resolve the qualified immunity inquiry at the earliest possible stage in litigation. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *see also Turmon v. Jordan*, 405 F.3d 202, 204 (4th Cir. 2005).

## **DISCUSSION**

I.      **Plaintiff's 1983 Claim**

Plaintiff's civil rights claim asserts that Defendant used excessive force against the Decedent, in violation of the Decedent's right, secured by the Fourth Amendment.[1]

---

[1] Although Plaintiff does not argue explicitly that the initial stop offended the substantive commands of the Fourth Amendment, this Court is satisfied that the stop was constitutional. As the Supreme Court has emphasized, "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123

The Supreme Court has clarified that in excessive force cases, as in all other cases, entitlement to qualified immunity is a two step inquiry, which must be "considered in proper sequence." *See Saucier v. Katz*, 533 U.S. 194, 200 (2001). Initially, a court must address the threshold question of whether a plaintiff has alleged facts setting forth valid claims for a deprivation of a constitutional right. *Id.* at 201; *see also Williams v. Hansen*, 326 F.3d 569, 574 (4th Cir. 2003). Then, if Plaintiff's constitutional claims survive this threshold review, the Court must determine whether that right was clearly established at the time of its alleged violation so that a reasonable person would have known of its violation. *Williams*, 326 F.3d at 574. In this second inquiry, the Court must consider whether a reasonable officer could have believed that his conduct was lawful. *See Wilson v. Lane*, 526 U.S. 603, 615 (1999). If so, qualified immunity protects the officer from personal liability.

As an initial matter, the Court first must address the threshold question of whether, taken in the light most favorable to the party asserting the injury, the facts show that Courson's conduct violated the Decedent's Fourth Amendment right to be free from unreasonable seizures, a right which includes seizures accomplished by excessive force. *Saucier*, 533 U.S. at 201. Whether an officer violates the Fourth Amendment by using excessive force during a seizure depends on the context, and courts must analyze the officer's actions under a standard of "objective reasonableness." *Graham v. Connor*, 490 U.S. 386, 397 (1989). This analysis does not differ where

---

(2000) (citing *Terry v. Ohio*, 392 U.S. 1, 27-30 (1968)). Here, Officer Courson was patrolling a high crime area and observed the Decedent shouting at two women and also saw that the Decedent was holding a large wad of cash in his hand. Such facts suffice to show that Officer Courson had a reason articulable suspicion that the Decedent was attempting to solicit prostitution or was engaging in an illegal drug transaction. Thus, Officer Courson's decision to stop and question the Decedent did not run afoul of the Fourth Amendment.

an officer employs deadly force. As the Supreme Court recognized in *Tennessee v. Garner*, "there can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." 471 U.S. 1, 7 (1985). Hence, the pivotal question here is whether Officer Courson's use of deadly force was reasonable.

The constitutional characterization of force as excessive under the Fourth Amendment must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 399 (internal quotations marks omitted). This standard is fact specific, and a court should consider several factors, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of officers or others, and whether he is actively resisting arrest." *Wilson v. Flynn*, 429 F.3d 465, 468 (4th Cir. 2005) (quoting *Graham*, 490 U.S. 396). Because police officers necessarily must make "split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving," a court must evaluate the facts from the perspective of a reasonable officer on the scene, and not in hindsight. *Graham*, 490 U.S. at 396-97. Consistent with this view, the Fourth Circuit has reiterated that "reasonableness is determined based on the information possessed by the officer at the moment that force is employed." *Waterman v. Batton*, 393 F.3d 471, 477 (4th Cir. 2005).

Applying these principles to the case at bar, this Court finds that Officer Courson's actions did not rise to the level of a violation of the Decedent's Fourth Amendment rights. In this case, the officers believed that the Decedent was in the process of committing a crime and saw the Decedent reach toward his waistband. In response, the officers told the Decedent to show his hands, an order with which the Decedent refused to comply. The officers tried to perform a pat down to ensure that the Decedent was not armed, but the Decedent began to struggle with the officers. At this point,

Officer Courson saw that the Decedent had a handgun. It is undisputed that the Decedent actually possessed a gun, and the weapon was later recovered from the scene. It also appears that the Decedent brandished the gun, presumably in an attempt to use it against the officers. For this reason, this Court holds that Officer Courson had reason to believe that the Decedent posed a serious threat of physical harm. In these circumstances, "[t]he Fourth Amendment does not require police officers to wait until a suspect shoots to confirm that a serious threat of harm exists." *Cox v. County of Prince William*, 249 F.3d 295, 301 (4th Cir. 2001) (quoting *Elliott v. Leavitt,* 99 F.3d 640, 643 (4th Cir. 1996)); *see also Anderson v. Russell*, 247 F.3d 125 (4th Cir. 2001) (upholding district court's judgment as a matter of law that officer who shot a citizen he believed to be armed was entitled to qualified immunity even though it was later discovered that the citizen was not reaching for a weapon). Therefore, Officer Courson's use of deadly force against the Decedent was reasonable under the standard set forth in *Graham v. Connor*, and Plaintiff has failed to show the existence of a Fourth Amendment violation.

Having ruled that Officer Courson did not violate the Decedent's Fourth Amendment rights, the Court need not address the second prong of the qualified immunity inquiry. Accordingly, Defendant is entitled to summary judgment on Plaintiff's 1983 claim.

**II.    Plaintiff's State Tort Claims**

A. Count I - Survival Act

This Court next turns to Plaintiff's state law claims. Count I of Plaintiff's Complaint, captioned "Survival Act" alleges an injury pursuant to Section 7-401(y) of the Maryland Code Estates and Trusts section and Section 12-101 of the District of Columbia Code. As Defendant correctly notes, neither statute creates a new cause of action. *See, e.g.*, *Trimper v. Porter-Hayden*,

7

501 A.2d 446, 450 (Md. 1985) ("The survival statute, unlike the wrongful death act, does not create a new cause of action unknown to common law. Rather, it changes the rule at common law under which certain actions by or against decedents abated with death").  As a result, Plaintiff cannot recover damages for Count I, and this Court will grant summary judgment on this count.

    B.    Count II - Negligent Use of Force

In addition his 1983 and Survival Act claim, Plaintiff also alleges a claim for negligence. In his motion for summary judgment, Defendant asserts that Plaintiff's claim for negligence cannot survive summary judgment because Plaintiff has not offered evidence that he has complied with the Local Government Tort Claims Act, Md. Code Ann., Cts. & Jud. Proceedings, §§ 5-301 to 304 (West 2006) (the "LGTCA").

The LGTCA provides that "an action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim required by this section is given within 180 days after the injury." Md. Code Ann., Cts. & Jud. Proceedings, § 5-304 (West 2006). This notice requirement may be excused "upon motion and for good cause shown." Md. Code Ann., Cts. & Jud. Proc. § 5-304(c).

Because Plaintiff seeks to recover for Courson's alleged negligence, the LGTCA applies to this claim. *See Thomas v. City of Annapolis,* 688 A.2d 448, 456 (Md. 1997) (noting that the LGTCA applies to all torts without distinction); *see also Luy v. Baltimore Police Dept*., 326 F. Supp. 2d 682, 693 (D. Md. 2004) (same).  To date, Plaintiff has failed to supply any documentary or testamentary evidence that he provided notice as required by the statute nor has Plaintiff made a showing of "good cause."  Defendant has attached to his motion the affidavit of Dawn Accipiter, an employee of the County Attorney's Office, which states that Prince George's County has no record that Plaintiff or

any other person filed a notice of a claim arising out of the December 12, 2001 shooting, and Plaintiff has not produced evidence that would refute this statement. Therefore, this Court finds that based on the current record, the evidence reflects that Plaintiff did not satisfy the requirements of the LGTCA prior to filing this suit. As a result, the Court will grant summary judgment on the negligence claim.

## **CONCLUSION**

In sum, for the aforementioned reasons, Defendant's Motion for Summary Judgment is granted. A separate Order shall follow.

Date:   July 6, 2006                                          /s/
                                                   Alexander Williams, Jr.
                                                   United States District Court